# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARGUERITE CARRUBBA** | § | **PLAINTIFF** |
| | § | |
| **VERSUS** | § | **CAUSE NO. 1:07cv1238-LG-RHW** |
| | § | |
| **HARRISON COUNTY, MISSISSIPPI, BY AND THROUGH ITS BOARD OF SUPERVISORS; HARRISON COUNTY SHERIFF GEORGE PAYNE, IN HIS OFFICIAL CAPACITY; CORRECTIONS OFFICER KARL STOLZE, ACTING UNDER COLOR OF STATE LAW; and CORRECTIONS OFFICER WILLIAM PRIEST, ACTING UNDER COLOR OF STATE LAW** | § § § § § § § § § § § | **DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER DENYING STOLZE'S MOTION FOR SUMMARY JUDGMENT AND HIS AND PRIEST'S SECOND MOTION TO STRIKE, GRANTING THEIR MOTIONS TO DISMISS, GRANTING IN PART AND DENYING IN PART PRIEST'S MOTION FOR SUMMARY JUDGMENT AND PRIEST AND STOLZE'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT are Defendant Karl Stolze's Motion for Summary Judgment, Qualified Immunity, and Failure to State a Claim Upon Which Relief can be Granted [206, 211], Defendant William Priest's Motion for Summary Judgment, Qualified Immunity, and Failure to State a Claim Upon Which Relief can be Granted [208, 213], their Supplemental Motion for Summary Judgment [218], and second Motion to Strike [248]. Plaintiff Marguerite Carrubba brought this action for the alleged abuse she received from Stolze and Priest while in the custody of the Harrison County Adult Detention Center ("HCADC"). Stolze argues (1) he did not use any force, and (2) alternatively, he acted objectively reasonably in the use of force. Movants argue (3) that there is no evidence that they were deliberately indifferent to a substantial risk of harm to her health; (4) alternatively, she was not damaged as a result; (5) she fails to state a claim

under Sections 1985 and 1986; and (6) she has no evidence of a conspiracy. Movants further argue that her Exhibits F-H and J-M are inadmissible on the conspiracy claims. The Court has considered the parties' submissions and the relevant legal authority. The Section 1985 and 1986 claims against Movants are dismissed without prejudice. Priest is granted summary judgment on the denial of medical care claim. Movants are granted summary judgment on the Section 1983 conspiracy to deny access to courts claim. The remainder of the motions are denied.

## FACTS AND PROCEDURAL HISTORY

On the early morning of Saturday, June 17, 2006, Carrubba was involved in a motor vehicle accident in Gulfport, Mississippi. She was subsequently arrested and charged with DUI refusal. She was placed in the custody of the HCADC.

After Carrubba was changed into the inmate uniform, she was placed into Holding Cell 8 with other female detainees. After her repeated requests for a phone call, Priest and Stolze handcuffed Carrubba behind her back and transferred her to Holding Cell 7, by herself. While alone in there, she managed to slip one hand out of the handcuffs. Priest and another officer reentered her cell, where she alleges they re-handcuffed her behind her back, and "pulled [her] arms straight up behind [her], kicking [her] feet out from under [her] and slammed [her] chin first into the concrete floor." (Pl.'s Dep. at 45). She was then left in the cell, sitting on the bench. Stolze later reentered the cell and shackled her to the floor. About twenty minutes later, he returned with a jail nurse. Carrubba complained to the nurse of her injuries. The nurse responded, "I guess you'll behave," and then she and Stolze left. *Id.* at 52.

Carrubba subsequently filed this lawsuit. She brings claims against Stolze and Priest under Sections 1983 and 1985 for excessive force; failure to provide medical care; denial of a

phone call, food, water, and a bed; covering up the alleged abuse; and conspiracies to use excessive force and to cover up the alleged abuse.

## DISCUSSION

MOTIONS FOR SUMMARY JUDGMENT

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56. To make this determination, the Court must view the evidence in the light most favorable to the non-moving party. *Abarca v. Metro. Transit. Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). A "material fact" is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute about a material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* The party that bears the burden of proof at trial also bears the burden of proof at the summary judgment stage. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986). "[W]hen a motion for summary judgment is made and supported . . . an adverse party may not rest upon . . . mere allegations or denials . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

I. SECTION 1983

Stolze seeks qualified immunity on the excessive force claim. Movants both seek summary judgment on the denial of medical care and conspiracy claims.

A. EXCESSIVE FORCE CLAIM AGAINST STOLZE

First, Stolze argues he is entitled to qualified immunity on the excessive force claim

because he did not use any force. Alternatively, if he did use force, he acted objectively reasonably under the circumstances.

In order to invoke the defense of qualified immunity, the "defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense." *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992). To meet defendant's initial burden, he must "demonstrate that he acted with a good faith belief that his actions were within his lawful authority, and that reasonable grounds existed for this belief based upon objective circumstances at the time he acted." *Douthit v. Jones*, 619 F.2d 527, 534 (5th Cir. 1980).

A defendant is then entitled to qualified immunity, unless the plaintiff (1) alleges that the defendant violated a constitutional right, and (2) proves that the defendant's conduct was objectively unreasonable. *Salas*, 980 F.2d at 305-06. Stated differently, qualified immunity does not apply when "the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right [and] the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

A defendant's conduct will be considered objectively unreasonable, if a reasonable official would understand that his conduct violates that constitutional right. *Salas*, 980 F.2d at 310. If reasonable officers could disagree over the lawfulness of his conduct, then the defendant is entitled to qualified immunity. *Id.* The officer's conduct is viewed in light of the clearly established law at that time. *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998).

The Due Process Clause, applicable to the States via the Fourteenth Amendment, protects

a pretrial detainee from excessive force that amounts to punishment. *Graham v. Connor*, 490 U.S. 386, 395 n.11 (1989). The standard for analyzing an excessive force claim under the Fourteenth Amendment is the same as the Eighth Amendment standard. *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993). This right is violated if there is (1) more than a de minimis injury, (2) which resulted directly and only from the use of force that was excessive to the need, and (3) the force was objectively unreasonable. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). To determine whether the force was excessive, the inquiry is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." *Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993). "Often, of course, there will be no evidence of the detention facility official's subjective intent, and the trier of fact must base its determination on objective factors suggestive of intent." *Id.* Some of these factors would be (1) the extent of the injury suffered, (2) the need for the application of force, (3) the relationship between the need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of the forceful response. *Id.* at 1447 n.29.

First, Stolze argues that he was not present in Holding Cell 7 when the force was being applied. There is a dispute of fact on this point. Carrubba testified that Priest and Stolze were the officers who applied this force.

Alternatively, Stolze argues that the force was objectively reasonable. The only reason given for the use of force on the Use of Force Report was Carrubba's "Verbal Non Compliance." (Stolze Dep. Ex. 4 at 2). His testimony gives no reason for the use of force in Holding Cell 7. All he testifies to is her prior conduct in Holding Cell 8 and in the hallway. She testified that all

she did was slip herself out of the handcuffs, pace up and down, and finally sit back down. When Priest and Stolze entered the cell, according to her, she was just sitting on the bench. The next event that she says happened was that the officers re-handcuffed her, kicked her feet out from under her and slammed her face down into the floor. They then left her sitting on the bench. The next thing that happened was about nine minutes later, Stolze returned and shackled her handcuffs to the leg of the bench, and neither he nor Carrubba give a reason. He testified:

> Q. And before you went back into Holding Cell Number 7 at 11:02:53-ish, did you see Marguerite being a problem at any time on this booking video?
>
> A. No.
> . . .
>
> Q. All right. And when you leave at 11:03:32, Marguerite is cuffed and on the floor, shackled and on the floor, isn't that right?
>
> A. Yes.

(Stolze Dep. at 102-03). Under this scenario, a jury could find that Stolze was not acting objectively reasonably under the circumstances. Viewed in the light most favorable to Carrubba, the evidence suggests that he did not use force in a good faith effort to maintain discipline, but rather used force maliciously, and sadistically for the very purpose of causing harm.

### B. DENIAL OF MEDICAL CARE

Next, Movants argue there is no evidence that they were deliberately indifferent to Carrubba's serious medical needs because she was "seen by a nurse" after she alleged she was assaulted.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "This

is true whether the indifference is manifested by . . . prison guards in intentionally denying or delaying access to medical care." *Id.* at 104-05. The "plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dep't of Crim. J.*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). "The mere delay of medical care can . . . constitute a . . . violation but only 'if there has been deliberate indifference [that] results in substantial harm.'" *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). "Deliberate indifference . . . occurs only where a prison official subjectively knows of and disregards a substantial risk to the inmate's health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The "official's knowledge of a substantial risk of harm may be inferred if the risk was obvious." *Easter*, 467 F.3d at 463. In addition, Section 1983 requires a showing of proximate causation, which is evaluated under the common law standard. *Murray v. Earle*, 405 F.3d 278, 290 (5th Cir. 2005).

For example, in *Easter*, the plaintiff alleged that "Powell refused to provide any treatment to, and ignored complaints of, a patient suffering from severe chest pain that she knew had a history of cardiac problems. Powell's alleged conduct meets the 'deliberate indifference' threshold." *Easter*, 467 F.3d at 464. In this situation, it was inferrable that Powell knew of the substantial risk of harm. *Id.* at 463. The court further noted that Easter's separate delayed treatment claim failed, because he did not allege that it resulted in serious harm. *Id.* at 464. However, he "clearly stated" a violation regarding his refusal to treat claim for the "severe chest pain he suffered during the period of time Powell refused to treat him." *Id.* at 464-65.

1.  STOLZE

Stolze's reason for his lack of deliberate indifference is that Carrubba was "seen by a nurse." He testified, and the video verified, that he was present when Carrubba was seen by the nurse for a total of thirty seconds. Carrubba testified that all that happened was she told the nurse Carrubba's injuries, and the nurse essentially told Carrubba that was what she got for not behaving. He then left with the nurse, and Carrubba was never given any medical attention or treatment. Viewed in the light most favorable to her, this is evidence from which a jury could conclude that he, in concert with the nurse, ignored Carrubba's complaints solely as punishment for her alleged prior behavior.

Stolze alternatively argues that Carrubba was not damaged because of this failure to treat. As *Easter* makes clear, in a failure to treat case, the plaintiff may recover for the pain she suffered during the time that the official failed to treat her. *Id.*; *Thayer v. Adams*, 2010 U.S. App. LEXIS 23292 at *20 (5th Cir. Feb. 4, 2010); *Chapman v. Johnson*, 339 Fed. Appx. 446, 448 (5th Cir. Aug. 3, 2009) (affirming denial of qualified immunity for failure to give Ibuprofen for a swollen ankle). There is evidence that she had been slammed head first into a concrete floor, and immediately and repeatedly complained of head, neck, and back pain as a result. As a failure to treat claim, she may recover for the pain she suffered. Stolze is not entitled to summary judgment on this claim.

2.  PRIEST

The Court has reviewed the record and finds no evidence that Priest was deliberately indifferent to Carrubba's requests for medical attention. The only evidence before the Court is that after the alleged use of force, she yelled out for a doctor. The jail nurse subsequently looked

in on Carrubba. There is no evidence that he ignored her requests for medical help or delayed calling the nurse to respond to Carrubba's requests. While there is evidence that the jail nurse did not do anything other than tell Carrubba that perhaps she would behave next time, there is no evidence that he knew this to be the case. He is therefore entitled to summary judgment on the denial of medical care claim.

### C. CONSPIRACY

Carrubba asserts Section 1983 conspiracy claims against Movants for the alleged conspiracies to use excessive force and to cover it up. Movants challenge the first conspiracy claim, arguing there was no agreement to assault her and she did not suffer a deprivation of a constitutional right as a result. She responds that she has evidence of such a conspiracy and excessive force.

"A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act." *Hale v. Townley*, 45 F.3d 914, 920 ( 5th Cir. 1995). In other words, Movants may be held liable for excessive force either directly, as the tortfeasors who inflicted the alleged force, or as a co-conspirators, regardless of who inflicted the excessive force. Because the direct excessive force claim survives summary judgment against Stolze, and because Priest does not challenge the direct excessive force claim against himself, it is not necessary for the Court to consider whether they alternatively have co-conspirator liability at this time.

Movants next argue the second conspiracy claim must fail because Carrubba is presently bringing a civil action for the alleged excessive force. She responds that there is a genuine issue of material fact as to whether the conspiracy to cover-up existed and whether there was a cover

up of the alleged violations.

This particular conspiracy claim alleges a conspiracy to deny Carrubba's access to courts. To prevail on this claim, she must prove that the conspiracy "hindered h[er] efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). It is not clear if she is pleading a "forward-looking" or "backward-looking" access claim. A forward looking access claim is a case where the "litigating opportunity yet to be gained" is being blocked by the defendants. *Christopher v. Harbury*, 536 U.S. 403, 414 (2002). "The object . . . is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.* at 413. She cannot prove a forward-looking denial of access, because she has in fact filed the excessive force claim.

A backward-looking claim is about "an opportunity already lost." *Id.* at 414-15. It looks "backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." *Id.* at 414. For a "backward-looking access claim," Carrubba must prove (1) an underlying cause of action, (2) the litigation of which was frustrated by official acts, (3) which resulted in a lost remedy. *Id.* at 415-16. As for the third element, she:

> must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought. There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.

*Id.* at 415. For example, the official deception "may allegedly have caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief." *Id.* at 414.

On the record as it presently stands, the Court finds no evidence that Carrubba has lost a remedy for her excessive force claim. There has yet been no loss nor "inadequate settlement." The Court is provided with no evidence of a lost opportunity to sue Movants or others, or the lost opportunity to seek some particular relief. Therefore, Movants are entitled to dismissal of the Section 1983 conspiracy to deny access to the courts.

II.     SECTION 1985

Movants seek summary judgment on the Section 1985 claims in the event their 12(b)(6) motions to dismiss these claims is denied. As set forth below, the Court finds that the First Amended Complaint fails to sufficiently state a Section 1985 claim. Therefore, this part of the summary judgment motions is moot.

MOTIONS TO DISMISS

To survive a Rule 12(b)(6) motion to dismiss, Carrubba must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). This does "not require heightened fact pleading of specifics." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555-56. The Court must view the facts in favor of the plaintiff. *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002).

The complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Bell Atlantic*, 550 U.S. at 555) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

I.   SECTION 1985 CONSPIRACIES

Carrubba also alleges conspiracy claims under Section 1985. Movants argue that the First Amended Complaint fails to state a Section 1985 conspiracy claim because it does "not describe the type of conspiracies proscribed by these statutes." (Stolze's Mem. Summ. J. at 10); (Priest's Mem. Summ. J. at 5). She responds that there is a genuine dispute of fact as to the conspiracies.

Section 1985 provides a cause of action for several types of conspiracies, under subsections one through three. 42 U.S.C. § 1985. Carrubba does not expressly cite to the portion or portions of Section 1985 on which she relies. Movants first argue that the First Amended Complaint fails to state a Section 1985(1) claim, because it does not allege they conspired to interfere with a federal official's performance of his duties. Subsection one provides:

> If two or more persons in any State . . . conspire to prevent, *by force, intimidation, or threat*, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; *or to induce by like means* any officer of the United States to leave any State, district or place, where his duties as an officer are required to be performed, *or to injure him in his person or property* on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties
> . . .
> the party so injured . . . may have an action for the recovery of damages, occasioned by such injury . . . against any one or more of the conspirators.

42 U.S.C. § 1985(1), (3) (emphasis added).

The First Amended Complaint alleges that Movants conspired to conceal the abuse of Carrubba. Specifically, it is alleged that Movants "and others prepared false reports of the incident and circumstances surrounding the beating of Plaintiff Carrubba." (1st Am. Compl. at 12 (¶34)).

> After Carrubba's beating, Defendants participated in a conspiratorial scheme to camouflage, cover-up, falsely explain and/or deny what in truth and fact happened to Carrubba.
> In aid of their conspiracy, Defendants directly, indirectly and falsely accused Carrubba of assaulting Corrections Officers and committing further criminal acts for which Carrubba could be charged, prosecuted or punished.
> Defendants Stolze and Priest further made false statements that Carrubba had been injured prior to arriving at the HCADC.

*Id.* at 11 (¶¶28-30). There is no allegation, however, that this included a conspiracy to use force, intimidation, or threat of a federal official, or to injure a federal officer's person or property. Therefore, the First Amended Complaint does not state a claim under subsection one.

Subsection two prohibits conspiracies to interfere with federal and state court proceedings. 42 U.S.C. § 1985(2). It specifically prohibits conspiracies between:

> two or more persons in any State . . . to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified . . .; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State . . . with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws[.]

42 U.S.C. § 1985(2). The First Amended Complaint does not allege that Carrubba was a party or witness in a federal court proceeding. There is no allegation that she was injured for having testified or attended a federal court proceeding. As for the state court proceeding portion of this statute, it requires a showing of racial or other class-based animus. *Daigle v. Gulf State Utils. Co.*, 794 F.2d 974, 979 (5th Cir. 1986). For the reasons discussed below, she does not allege any racial or class-based animus behind the conspiracy. Further, she does not allege that she was injured while trying to protect the equal rights of others. Therefore the First Amended Complaint

does not state a claim under subsection two.

Finally, subsection three prohibits conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws," or to prevent another from voting or advocating in a federal election. 42 U.S.C. § 1985(3). Again, a conspiracy to deprive another of the equal protection of the laws, requires a showing that "some racial, or class-based discriminatory animus lay behind the conspiracy." *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 (5th Cir. 2001). "It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' . . . its adverse effects upon an identifiable group." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 271-72 (1993). Some Fifth Circuit cases only accept racial claims under this provision. *Horaist*, 255 F.3d at 271 n.12; *Bryan v. City of Madison*, 213 F.3d 267, 276 (5th Cir. 2000); *Newberry v. E. Tex. State Univ.*, 161 F.3d 276, 281 n.2 (5th Cir. 1998); *Deubert v. Gulf Fed. Savs. Bank*, 820 F.2d 754, 757 (5th Cir. 1987). *Deubert* held, "*it is well-established* in this circuit that the only conspiracies actionable under section 1985(3) are those motivated by racial animus." *Id.* (emphasis added). However, *Deubert* did not address its contemporary cases which held otherwise. For example, one such case held, "*It is well-settled* law that discriminatory animus behind an alleged violation of section 1985(3) must be racially based or in some other way class-based." *Galloway v. Louisiana*, 817 F.2d 1154, 1159 (5th Cir. 1987) (emphasis added). These other Fifth Circuit cases require a class that is based on an "inherited or immutable characteristic," political belief, or association. *Sullivan v. County of Hunt*, 106 Fed. Appx. 215, 220 (5th Cir. 2004); *Hamill v. Wright*, 870 F.2d 1032, 1037-38 (5th Cir. 1989); *McLean v. Internat'l Harvester Co.*, 817 F.2d 1214, 1219 (5th Cir. 1987) (scapegoat employees not

protected class, because it "does not possess discrete, insular and immutable characteristics similar to race, national origin or sex"); *Galloway*, 817 F.2d at 1159; *Kimble v. D.J. McDuffy, Inc.*, 623 F.2d 1060, 1066 (5th Cir. 1980). Of course, none of these cases found the allegations of non-racial animus at issue to be sufficient.

Under either view, the First Amended Complaint here misses the mark. The only characteristic Carrubba alleges she and the other alleged victims share is that they are "accused and arrested citizen[s] temporarily incarcerated as a 'pre-trial detainee[s],'" "other inmates," and "other detainees held in Booking." (1st Am. Compl. at 1, 2, 33 (¶¶1, 5)). Her allegations, taken as true, do not state a conspiracy motivated by race, another inherited or immutable characteristic, political belief, or association. *Accord*, *Burkett v. City of El Paso*, 513 F. Supp. 2d 800, 822 (W.D. Tex. 2007) ("those arrested by the El Paso Police Department" not sufficient to allege racial or class-based animus under Section 1985(2)).

Further there is no allegation that the conspiracy was to prevent another from voting or advocating in a federal election. Therefore the First Amended Complaint fails to state a claim under Section 1985(3). The Section 1985 claims against Movants are dismissed without prejudice.

## II. SECTION 1986

Movants asks for dismissal of the Section 1986 claim. This statute provides:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in [Section 1985], are about to be committed, and having power to prevent or aid in preventing the commission of same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured.

42 U.S.C. § 1986. In other words, the existence of a Section 1985 conspiracy is an element of

the Section 1986 claim. Because Carrubba has failed to plead this element, she has not stated a Section 1986 claim.

<u>SECOND MOTION TO STRIKE</u>

Movants argue that Carrubba's exhibits F-H and J-M are inadmissible on summary judgment to prove her conspiracy claims. As shown above, the Court did not consider these exhibits in sustaining her Section 1983 claim for conspiracy to abuse. Moreover, the exhibits were immaterial to the Court's dismissal of the remaining conspiracy claims. Therefore, Movants' second Motion to Strike is moot.

**IT IS THEREFORE ORDERED AND ADJUDGED**, that for the reasons stated above, Defendant Karl Stolze's Motion for Summary Judgment [206] should be and is hereby **DENIED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that Defendant William Priest's Motion for Summary Judgment [208] should be and is hereby **GRANTED** on the denial of medical care claim. The remainder is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED AND ADJUDGED** that Stolze's Motion to Dismiss for Failure to State a Claim [211] should be and is hereby **GRANTED.** The Section 1985 and 1986 claims against him are dismissed without prejudice.

**IT IS FURTHER ORDERED AND ADJUDGED** that Priest's Motion to Dismiss for Failure to State a Claim [213] should be and is hereby **GRANTED**. The Section 1985 and 1986 claims against him are dismissed without prejudice.

**IT IS FURTHER ORDERED AND ADJUDGED** that Stolze and Priest's Supplemental Motion for Summary Judgment [218] should be and is hereby **GRANTED** as to the conspiracy to cover up abuse claim. The remainder is **DENIED.**

**IT IS FURTHER ORDERED AND ADJUDGED** that Stolze and Priest's second Motion to Strike [248] should be and is hereby **DENIED AS MOOT.**

**SO ORDERED AND ADJUDGED** this the 7th day of May, 2010.

*s/ Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE