ORIGINAL

1

```
 1           IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
 2                     SOUTHERN DIVISION

 3

 4    MARGUERITE CARRUBBA,
           Plaintiff,
 5

 6    VERSUS            CIVIL ACTION NO: 1:07cv1238

 7

      HARRISON COUNTY, MISSISSIPPI,
 8    by and through its Board of
      Supervisors; HARRISON COUNTY
 9    SHERIFF, George Payne;
      WAYNE PAYNE; DIANE GATSON RILEY;
10    STEVE CAMPBELL; RICK GATSON;
      RYAN TEEL; KARLE STOLZE;
11    WILLIAMS PRIEST; JAMES A.
      GONDLES, JR; AMERICAN
12    CORRECTIONAL ASSOCIATION;
      JOHN AND JANE DOES 1-3; HEALTH
13    ASSURANCE, LLC AND J.L. WHITE,
           Defendants.
14

15    _____

16            DEPOSITION OF KARL STOLZE

17    _____

         Taken at the offices of Dukes, Dukes,
18    Keating & Faneca, 2909 13th Street,
      Sixth Floor, Gulfport, Mississippi, on
19    Tuesday, September 22, 2009, beginning
      at 8:36 a.m.
20

21   REPORTED BY:

22           F. DUSTY BURDINE, CSR No. 1171
              Simpson Burdine & Migues
23              Post Office Box 4134
             Biloxi, Mississippi  39535
24             dusty@SBMreporting.com
                  (228) 388-3130
25
```

EXHIBIT "2"

```
1        A.   No.
2        Q.   Okay.  And you pled guilty to one count
3   of conspiracy to deprive rights under color of
4   law; is that correct?
5        A.   Yes.
6        Q.   Tell me about that conspiracy.  When did
7   it start and end?
8        A.   Well, according to the plea agreement,
9   it started somewheres around August and ended in
10  January.
11       Q.   Okay.  Who were the co-conspirators?
12  Can you name them?
13       A.   Just -- I don't know.  Whoever was in
14  the trial, I suppose.
15       Q.   Was George Payne a part of your
16  conspiracy?
17       A.   Not that I can remember.
18       Q.   Did he ever meet with you or tell you
19  what to do?
20       A.   No.
21       Q.   Okay.  Was it a policy of the Harrison
22  County Jail that you knew about to abuse prisoners
23  for sport?
24       A.   No.
25       Q.   When did you first meet with the -- did
```

1    you meet with the FBI first or just DOJ
2    attorneys --
3         A.   The attorneys.
4         Q.   -- during the investigation?
5         A.   I don't remember the date.
6         Q.   How many times did you meet with them?
7         A.   Twice.
8         Q.   Did they tell you that you faced a long
9    time in jail?
10        A.   Yes.
11        Q.   Were they specific, like life or just
12   20, 30 years, or what did they actually tell you?
13        A.   They were specific.
14        Q.   What was that?
15        A.   Life.
16        Q.   So were you offered the possibility of
17   serving life in prison if you didn't agree to this
18   one count plea?
19        A.   Yes.
20        Q.   At the sentencing hearing, did the U.S.
21   Probation Department present any testimony or
22   documents regarding their recommendations on the
23   sentencing?
24        A.   Only to the judge.
25        Q.   Okay.  Was it discussed in open court in

Case 1:07-cv-01238-LG-RHW    Document 277-3    Filed 07/28/10    Page 4 of 12

McBay, Al-Khidhr & Seal v. Harrison County, Mississippi, by and through its Board of Supervisors, et al
Videotaped deposition of: Morgan Lee Thompson                          August 14, 2009

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

Southern Division

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| GARY BRICE McBAY, | \* | 1:07CV1205-LG-RHW |
| WILLIAM DAVID SEAL, | \* | 1:08CV175-LG-RHW |
| ONLY AL-KHIDHR, | \* | 1:07CV1223-LG-RHW |
| Plaintiffs, | \* | |
| v. | \* | |
| HARRISON COUNTY, MISSISSIPPI | \* | |
| BY AND THROUGH ITS BOARD OF | \* | |
| SUPERVISORS, et al., | \* | ORIGINAL |
| Defendants. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

VIDEO-RECORDED DEPOSITION OF

MORGAN THOMPSON

August 14, 2009

9:39 a.m. - 11:06 a.m.

Hopewell, Virginia

REPORTED BY: Kurt D. Hruneni, CCR-VA

McBay, Al-Khidhr & Seal v. Harrison County, Mississippi, by and through its Board of Supervisors, et al
Videotaped deposition of: Morgan Lee Thompson                August 14, 2009

Page 12

```
 1        approximately 9:44 p.m.  We're now off the record.
 2
 3             (Discussion off the record.)
 4
 5             THE VIDEOGRAPHER:  The time is
 6        approximately 9:47 a.m.  Please note the
 7        correction to the previous two time announcements.
 8        They were a.m., not p.m.
 9
10             MR. BRENDEL:  As far as the instruction
11        not to answer, I'm going to instruct the witness
12        not to answer with any incidents in the Ryan Teel
13        incident.
14             The witness can generally answer as to
15        events within the plea agreement, not events
16        outside the plea agreement.
17
18             BY MR. GEWIN:
19        Q    Mr. Thompson, during your employment there
20   at the Harrison County Adult Detention Center in the
21   booking department, was there, in fact, a policy to
22   abuse inmates or detainees at the jail?
23        A    No, sir.
24        Q    During your employment in the booking
25   department of the Harrison County Adult Detention
```

McBay, Al-Khidhr & Seal v. Harrison County, Mississippi, by and through its Board of Supervisors, et al
Videotaped deposition of: Morgan Lee Thompson                August 14, 2009

Page 13

1    Center, were you aware of any conspiracy to abuse
2    inmates?
3        A     That depends on what you consider a
4    conspiracy. I mean, Department of Justice said a
5    conspiracy was knowing that somebody didn't write down
6    every single little detail that happened in a report.
7              They made it sound like a -- in court, we
8    all got together and decided we were just going to beat
9    up everybody that came in. That's not the case.
10             But to their definition of knowing that
11   people left out parts of reports? Yes. Yes.
12       Q     During your employment at the Harrison
13   County Adult Detention Center, did you ever use
14   excessive force on any inmate or detainee who was being
15   compliant and cooperative?
16       A     No, sir.
17       Q     Was your immediate supervisor for a period
18   of time Rick Gaston?
19       A     Yes, sir.
20       Q     Did Mr. Gaston have any part of any
21   conspiracy, that you're aware of, conspiracy to abuse
22   inmates?
23       A     As far as I was involved in it, as well.
24   Yes. He had just as much involvement as I did. If to
25   keep down on paperwork and everything, instead of

Case 1:07-cv-01238-LG-RHW   Document 277-3   Filed 07/28/10   Page 7 of 12

McBay, Al-Khidhr & Seal v. Harrison County, Mississippi, by and through its Board of Supervisors, et al
Videotaped deposition of: Morgan Lee Thompson           August 14, 2009

Page 14

```
 1   writing a 20-page report on every sentence that
 2   somebody said, you condense it down to the important
 3   parts, the times, the dates, what happened, the
 4   important things that happened, in your report, clear,
 5   concise, and file the report.
 6           You don't have to add all the frills to it.
 7   He knew we did that.
 8       Q   Okay.  Now, aside from the issue of
 9   possibly falsifying, embellishing, condensing reports,
10   however you want to say it, what I'm talking about are
11   the actual conspiracy to purposely abuse or assault
12   inmates.
13           Was Rick Gaston a part of that, if it
14   existed?
15       A   No, sir.  No, sir.
16           MR. BUCHANAN:  I'm going to object to the
17       form and calling for a legal conclusion.
18           MR. CHASE:  I'll object, as well.
19           MR. GEWIN:  What's the specific
20       objection?  I'll correct it, if I can.
21           MR. BUCHANAN:  I think, one, it's
22       leading.  And two, I think it's calling -- asking
23       him as a layperson to make legal conclusions
24       relative to law that he's not qualified to make.
25           MR. BRENDEL:  I'm going to join in the
```

McBay, Al-Khidhr & Seal v. Harrison County, Mississippi, by and through its Board of Supervisors, et al
Videotaped deposition of: Morgan Lee Thompson                August 14, 2009

Page 15

```
 1        objection.
 2
 3              BY MR. GEWIN:
 4        Q     During the plea agreement here, I noticed
 5   that on page 3 it says that you -- there's a statement
 6   made that you participated in over 100 assaults against
 7   inmates, and that you observed co-conspirators
 8   participate in over 100 additional assaults against
 9   inmates at the jail.
10              Did that really happen?
11        A     Their idea of an assault was any kind of a
12   fight. Any kind of a fight between an inmate and an
13   officer, they considered an assault.
14              When we had discussed that number, we had
15   sat down and they said, "How many times have you been
16   involved in a fight, would you say?"
17              I said, "I don't know. Sometimes one a
18   week, sometimes one every month. It just depends."
19              And they said, "Okay. Well, assuming that
20   you got into one fight a week, that would add up to --
21   you know, 52 weeks a year or whatever, and how many
22   years did you work there. Okay. So this would add
23   up" --
24              So they're assuming that every fight that
25   we got into was an officer assault. And the fights
```

McBay, Al-Khidhr & Seal v. Harrison County, Mississippi, by and through its Board of Supervisors, et al
Videotaped deposition of: Morgan Lee Thompson          August 14, 2009

Page 16

```
 1    that I have seen and weren't involved in, the things
 2    that I had responded to but were already finished by
 3    the time I got there, they considered those assaults,
 4    as well.
 5         Q    Were the deputy --
 6         A    Were there conflicts?  Yes.
 7         Q    Were the deputies at that time armed with
 8    sidearms or billy clubs or anything like that?
 9         A    No, sir.
10         Q    Did you have an OC spray?
11         A    Yes, sir.
12         Q    Was that your only method of control --
13         A    OC spray was the only thing we had.  Yes,
14    sir.  Until we got the tasers.
15         Q    All right.  We're talking on top of each
16    other.  And that's my fault, too.  So I'll try to --
17    let me finish my question, even though you anticipate
18    it.  And I'll be patient and let you answer completely;
19    okay?
20         A    I'm sorry.
21         Q    There's, I guess, a good bit of times at
22    the jail when you're dealing with people -- this is the
23    question.  Now, if you have intoxicated people come in
24    at night, are they sometimes uncooperative or unruly?
25         A    Quite often.
```

Case 1:07-cv-01238-LG-RHW    Document 277-3    Filed 07/28/10    Page 10 of 12

McBay, Al-Khidhr & Seal v. Harrison County, Mississippi, by and through its Board of Supervisors, et al
Videotaped deposition of: Morgan Lee Thompson     August 14, 2009

Page 25

```
 1   the cell until they do want to comply.
 2       Q     The earlier question I asked you, I was
 3   quoting verbatim from the DOJ attorney when he stated,
 4   "The report suggested that if inmates had been more
 5   compliant, the defendants would not have had to assault
 6   them."  The word "assault" was the DOJ's word.
 7             Did you use a continuum of force, or did
 8   you really think it was an assault if you had to use
 9   force to restrain or control an inmate or detainee?
10       A     I don't believe it was --
11             MR. BUCHANAN:  Object to the form.
12
13             BY MR. GEWIN:
14       Q     You may answer.
15       A     I don't believe it was assault.  Like I
16   said, the way they came up with their numbers, anytime
17   there was any kind of physical conflict between an
18   inmate and an officer, the DOJ would call it an
19   assault.
20       Q     You've had training, I assume, when you
21   were a deputy.
22       A     Yes, sir.
23       Q     Could you kind of tell us -- I don't want
24   dates and times -- but generally what kind of training
25   you went through --
```

COPY

1

```
 1         IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
 2                   SOUTHERN DIVISION

 3

 4   GARY BRICE McBAY,
         Plaintiff,
 5

 6   VERSUS          CIVIL ACTION NO: 1:07cv1205LG-RHW

 7

     HARRISON COUNTY, MISSISSIPPI,
 8   by and through its Board of
     Supervisors; HARRISON COUNTY
 9   SHERIFF, George Payne, in his
     official capacity; CORRECTIONS
10   OFFICER MORGAN THOMPSON,
     acting under color of state law,
11       Defendants.

12
```

---

## DEPOSITION OF REGINA L. RHODES

---

```
15       Taken at the offices of Brown Buchanan,
     P.A., 796 Vieux Marche' Mall, Suite 1,
16   Biloxi, Mississippi, on Thursday,
     September 17, 2009, beginning at 2:22
17   p.m.

18

19   APPEARANCES:

20       PATRICK R. BUCHANAN, ESQUIRE
         MARK V. WATTS, ESQUIRE
21       Brown Buchanan, P.A.
         796 Vieux Marche' Mall, Suite 1
22       Biloxi, Mississippi  39530
            ATTORNEYS FOR PLAINTIFF
23
         JOE C. GEWIN, ESQUIRE
24       Dukes, Dukes, Keating & Faneca, P.A.
         2909 13th Street, Sixth Floor
25       Gulfport, Mississippi  39501
            ATTORNEY FOR GEORGE PAYNE, JR.
```

E-mail: lmigues@sbmreporting.com

```
 1        Q.   So it was just kind of a risk you took
 2   working in booking; is that right?
 3        A.   It wasn't explained to me as that way.
 4        Q.   How was it explained to you?
 5        A.   That we were going to work in booking.
 6        Q.   If Jessie Lee Williams hadn't have been
 7   beat to death that night, do you think you would
 8   have gone to prison at all?
 9        A.   No, sir.
10        Q.   There wasn't any real conspiracy, was
11   there?
12        A.   Conspiracy as in everybody wrote false
13   reports, yes, they did.
14        Q.   But not to murder somebody?
15        A.   I don't believe there was a conspiracy
16   to murder somebody.
17        Q.   You testified at your trial that you
18   didn't record these conversations except as to
19   protect yourself if someone said something to the
20   contrary; is that right?
21        A.   Yes, sir.
22        Q.   So your testimony today is that you did
23   not tape-record these deputies, booking deputies
24   that called you except as for future reference,
25   that you were not trying to lower your own prison
```